**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                                                  **CRIMINAL ACTION**

**VERSUS**                                                                                              **NO. 11-70**

**EUGENE THOMPSON**                                                              **SECTION I**

<u>**ORDER AND REASONS**</u>

Before the Court is a motion[1] filed by defendant, Eugene Thompson ("Thompson"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed an opposition on April 15, 2015.[2]

Also before the Court is a motion for an evidentiary hearing[3] which Thompson filed under the mistaken belief that the government did not timely file a response as ordered by the Court.[4]

For the following reasons, the Court finds that an evidentiary hearing is not required, the motions are **DENIED**, and defendant's post-conviction application is **DISMISSED WITH PREJUDICE**.

---

[1] R. Doc. No. 675.
[2] R. Doc. No. 679.
[3] R. Doc. No. 360.
[4] R. Doc. No. 360, at 2 ("As the Government continues to fail to respond Petitioner requests that in the place of the response an evidentiary hearing can be held. Petitioner contends that sufficient facts are supported to validate a hearing on his § 2255."). The motion is styled as a motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure, but Thompson states that he "understands that a default judgment is not the proper remedy when the Government fails to respond to a habeas petition," and he requests an evidentiary hearing as an alternative. R. Doc. No. 360, at 2. Because Thompson's motion for an evidentiary hearing proceeds from the faulty premise that the government failed to file a response, and because the Court finds that an evidentiary hearing is not required, Thompson's motion for an evidentiary hearing is without merit.

## BACKGROUND

On December 13, 2011, Thompson was convicted by a jury of all 4 counts of a 4 count superseding indictment.[5] Count 1 charged that Thompson conspired with others to distribute and to possess with the intent to distribute 280 grams or more of cocaine base ("crack") and a quantity of cocaine hydrocholoride in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846.[6] Count 2 charged that on or about March 2, 2011, Thompson, aided and abetted by others, knowingly and intentionally possessed with the intent to distribute 280 grams or more of cocaine base ("crack") and a quantity of cocaine hydrocholoride in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(C), and 18 U.S.C. § 2.[7] Count 3 charged that on or about March 2, 2011, Thompson, aided and abetted by others, knowingly possessed a firearm, i.e., an assault rifle, in furtherance of the drug trafficking crime charged in count 2, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.[8] Count 4 charged that on or about March 2, 2011, Thompson, having previously been convicted of a felony, knowingly possessed in and affecting interstate commerce the same assault rifle described in count 3, in violation 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[9] Prior to trial, the government also filed a bill of information

---

[5] *See* R. Doc. Nos. 127, 138, 138-2. The Court notes that Thompson was initially charged along with five other co-defendants in a 10-count indictment. R. Doc. No. 36. Thompson was charged in counts 1, 8, and 9 of the original indictment, and such counts were substantially similar to counts 1, 2, and 3 of the superseding indictment. *Compare* R. Doc. No. 36, at 1-2, 4-5, *with* R. Doc. No. 127, at 1-2. The superseding indictment was filed on December 8, 2011, four days before the beginning of trial. R. Doc. No. 127.

The Court further notes that Thompson's five codefendants all pled guilty to various counts prior to Thompson's trial. *See, e.g.*, R. Doc. No. 203, at 3-4. Three of Thompson's codefendants testified at his trial. *See, e.g.*, R. Doc. No. 138, at 1.

[6] R. Doc. No. 127, at 1-2.

[7] R. Doc. No. 127, at 2.

[8] R. Doc. No. 127, at 2.

[9] R. Doc. No. 127, at 3.

alleging a prior felony conviction and requesting an enhanced penalty pursuant to 21 U.S.C. § 851(a).[10]

On May 10, 2012, the Court sentenced Thompson to a total term of imprisonment of 300 months, consisting of 240 months as to each of counts 1 and 2, and 120 months as to count 4, to be served concurrently, and 60 months as to count 3, to be served consecutively to each of the other terms of imprisonment.[11] The sentences imposed with respect to counts 1, 2, and 3 were the mandatory minimum sentences prescribed by statute.[12]

Thompson appealed his conviction and sentence, challenging (1) this Court's rulings with respect to *Batson* challenges during voir dire, and (2) this Court's denial of Thompson's motion for a judgment of acquittal based on insufficient evidence.[13] The U.S. Court of Appeals for the Fifth Circuit affirmed the judgment against Thompson on January 15, 2014,[14] and the U.S. Supreme Court denied certiorari on May 27, 2014.[15] The government does not challenge the timeliness of Thompson's § 2255 motion.

## STANDARD OF LAW

**I.      28 U.S.C. § 2255**

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S.

---

[10] R. Doc. No. 129.
[11] R. Doc. No. 220, at 2.
[12] *See, e.g.*, R. Doc. No. 203, at 3.
[13] *See* R. Doc. No. 309.
[14] R. Doc. No. 309; *United States v. Thompson*, 735 F.3d 291 (5th Cir. 2013).
[15] R. Doc. No. 314; *Thompson v. United States*, 134 S. Ct. 2663 (2014).

424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to § 2255, the Court must grant a defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

## II.    Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court articulated a

two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance. This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of alleged trial errors, the petitioner must show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The petitioner must satisfy both prongs of the *Strickland* test to be successful on an ineffective assistance claim. *See id.* at 697. A court is not required to address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

## DISCUSSION

Thompson has asserted five grounds for relief, all of which relate to alleged ineffective assistance of counsel at different stages of Thompson's case. The Court addresses Thompson's asserted grounds for relief in turn.

5

## I.     Plea Bargaining

Thompson contends that his trial attorney, Marion Floyd ("Floyd"), provided constitutionally deficient counsel by advising Thompson to reject a plea offer.[16] Thompson states that "[t]he plea agreement the Government discussed with Counsel would have made it possible for the Movant to enter a plea of guilty to one Count of a violation of Title 18 U.S.C. § 922(g)[17] possession of a firearm by a convicted felon."

Floyd allegedly advised Thompson that there was "insufficient evidence to support a conviction," "that the evidence of cooperating co-defendants would not be allowed," and that the government did not "have any other evidence such as controlled buys, audio or video evidence."[18] Thompson complains that by rejecting a plea offer pursuant to Floyd's advice, Thompson's "sentenc[ing] exposure went from a maximum sentence of 10 years to a maximum sentence of life. Counsel's error increased the Movant's sentence by 20 years."[19][20] Thompson states in an affidavit that he "would have taken the plea agreement offered by the Government if not for the bad advi[c]e Counsel Floyd offered."[21]

---

[16] R. Doc. No. 346, at 11-13. The Court notes that the government does not contest the existence of a plea offer or the fact that Floyd communicated that offer to Thompson.

[17] *See* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.").

[18] R. Doc. No. 346, at 11 (internal quotation marks omitted); *see also* R. Doc. No. 346, at 44 ("Counsel told me that anything my co-defendant could testify to would be inadmissible and would be here say [sic].").

[19] R. Doc. No. 346, at 11.

[20] R. Doc. No. 346, at 11 (emphasis omitted).

[21] R. Doc. No. 346, at 28, 44. Thompson has also submitted the affidavits of three individuals who communicated with Floyd "at least 10 times" prior to trial regarding Thompson's case. R. Doc. No. 346, at 31-33. Although they state that Floyd advised them of the plea offer and that "[Floyd] advised to not take the offer because [Thompson] was his first client in which [t]here was not evidence to his guilt," the affidavits do not address whether Thompson expressed any opinion regarding the offer or whether Thompson disagreed with or had concerns about Floyd's advice to reject it. R. Doc. No. 346, at 31-33.

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In *Lafler*, the U.S. Supreme Court described "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Id.*; *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012).

As stated by the U.S. Supreme Court:

[A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385; *accord Rivas-Lopez*, 678 F.3d at 357.

Even assuming for the sake of argument that a plea offer as described by Thompson was in fact offered by the government,[22] the Court need not address the first *Strickland* prong because Thompson has failed to satisfy his burden of demonstrating *Strickland* prejudice. Thompson may now, with twenty-twenty hindsight, wish that he had chosen to plead guilty to a crime that he contends he did not commit, but Thompson has not shown that "there is a reasonable probability . . . that [he] would have accepted the plea . . . but for the ineffective advice of counsel." *Lafler*, 132 S. Ct. at 1385. Thompson does not admit, and he has never admitted, his guilt to count 4 which is the § 922(g) charge. Thompson challenged the sufficiency of the evidence against him on direct appeal,[23] and Thompson's fourth and fifth asserted grounds for relief, discussed below,

---

[22] In its brief, the government does not specifically admit or deny the existence of a plea offer. *See* R. Doc. No. 359, at 4-5.
[23] *See* R. Doc. No. 309, at 15-17.

are further challenges to the evidence connecting him to the firearm.[24] The Court also notes that Thompson has attached to his § 2255 motion a letter to Floyd dated July 16, 2012, in which Thompson stated: "You [know] all i can play in my head is that i [know] *i am innocent* and my law[y]er [knows] i am."[25] Such statements demonstrate that Thompson continued to maintain his innocence after trial and during the pendency of his appeal.[26] Moreover, there is language throughout Thompson's memorandum which clearly indicates that he continues to believe he is innocent.[27]

Despite Thompson's post-hoc assertion in his affidavit that he would have pled guilty but for Floyd's advice,[28] the Court finds that it does not need to conduct an evidentiary hearing to resolve Thompson's claim. "Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citing *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980)). "A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely

---

[24] *See* R. Doc. No. 346, at 19; *see also* R. Doc. No. 346, at 16 (mentioning "the 'alleged' admission on the assault rifle" in connection with ground three).

[25] R. Doc. No. 346, at 50 (errors in original) (emphasis added).

[26] The Court furthers notes that Thompson's sole statement on his own behalf at his sentencing hearing was "I regret from giving Kennedy a ride." R. Doc. No. 288, at 8.

[27] *E.g.*, R. Doc. No. 346, at 11 ("Movant was detained after being with an[] individual that was making a pickup of narcotics in a buy and bust from Police and DEA agents."); R. Doc. No. 346, at 16 (noting the "lack of [evidence] placing a specific weapon in the hand of the Movant at any time, except the 'alleged' admission on the assault rifle found in Kelly's residence"); R. Doc. No. 346, at 21 ("Besides the single 'utterance' there was no evidence linking the Movant to [the] specific firearm and nothing except in [sic] general non-specific testimony that was highly suspect."); R. Doc. No. 346, at 24 ("The Movant contends a miscarriage of justice has occurred. Movant was arrested and jailed without cause. . . . Agents in the employ of the Government constructed a case that was built by smoke and mirrors obtaining a conviction for a man that is only guilty of associating with persons who were engaged in the sale of narcotics. Guilt by association i[s] not a crime in the United States.") (emphasis omitted).

[28] R. Doc. No. 346, at 28, 44.

merit of [his] allegations.'" *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)); *see also United States v. Arledge*, 597 F. App'x 757, 759 (5th Cir. 2015).

In *Reed*, the defendant claimed in his § 2255 motion "that his trial counsel was ineffective in failing to properly advise him on the sentence he would have faced had he accepted the government's plea offer." 719 F.3d at 371. The district court denied the defendant's motion without an evidentiary hearing, stating that "[t]he only evidence Reed offers the Court in conjunction with this allegation [is] his self-serving and uncorroborated account of his discussions with his counsel." *Id.* at 372.

The Fifth Circuit vacated the district court's order and remanded the case for an evidentiary hearing. *Id.* at 375. With respect to *Strickland*'s deficient performance prong, the Fifth Circuit stated that "[i]n his affidavit, [the defendant] makes a specific factual claim based on personal knowledge," and that such "affidavit was sufficient to prove his allegation and was not speculative, conclusory, plainly false, or contradicted by the record." *Id.* at 374. Although "[t]he district court did not address the issue of prejudice," the Fifth Circuit found that an evidentiary hearing was also required as to that *Strickland* prong because the defendant stated that "he would have pleaded guilty if he had been given an accurate picture of his sentencing exposure." *Id.* at 375. "Reed states that he was offered a plea deal in which he would plead guilty to only one count involving counterfeit Louis Vuitton products. Reed did not assert innocence as to this count, and in fact admitted at trial that he knew these products were counterfeit." *Id.* The Fifth Circuit found that "[i]t is not difficult to conclude that Reed would plead guilty to conduct he was willing to admit at trial." *Id.*

Thompson's case is distinguishable from *Reed*. As discussed above, Thompson has offered nothing to suggest that he was "willing to admit the conduct underlying the count that

was the subject of the plea offer." *Reed*, 719 F.3d at 375. Conversely, the defendant in *Reed* was entitled to an evidentiary hearing with respect to *Strickland* prejudice because he "did not assert innocence as to this count, and in fact admitted at trial . . . the conduct underlying the count that was the subject of the plea offer." *Id.* Thompson does not attempt to explain or address his continued assertions of innocence, and his one-sentence statement in his affidavit that he would have accepted the plea offer is "conclusory," "unsubstantiated by evidence," lacking in any corroborating "independent indicia of the likely merit of [his] allegations," and "contradicted by the record." *Id.* at 373-74 (internal quotation marks omitted) (alteration in original). Accordingly, Thompson is not entitled to an evidentiary hearing regarding this issue.[29]

## II.   Appeal

Thompson contends that he received ineffective assistance of counsel in connection with his direct appeal.[30] "The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *Williamson*, 183 F.3d at 462; *see also United States v. Reinhart*, 357 F.3d 521, 525, 530 (5th Cir. 2004). Appellate counsel's performance is evaluated under the same *Strickland* standard as trial counsel's performance. *Williamson*, 183 F.3d at 462. "To prevail, [the defendant] must establish, first, that his attorney's representation was deficient and, second, that the deficient performance caused him prejudice." *Id.*

---

[29] The Court further notes that Thompson has offered no evidence or argument that could sustain his burden of demonstrating that the Court would have accepted the terms of the plea agreement. *Lafler*, 132 S. Ct. at 1385. In order to "enter[] judgment on a guilty plea," this Court would, among other things, have had to "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). As discussed above, Thompson has consistently maintained his innocence. There is nothing in the record to suggest that Thompson would have admitted to and signed a factual basis and, therefore, nothing to suggest "that the court would have accepted [the] terms" of any plea offer. *Lafler*, 132 S. Ct. at 1385.

[30] R. Doc. No. 346, at 13-17.

With respect to the deficient performance prong in the appellate context, the Fifth Circuit has stated that "[c]ounsel does not need to 'raise every nonfrivolous ground of appeal available.' Nonetheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* (citation and footnote omitted) (quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.* at 463.

With respect to the prejudice prong, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different." *Id.* (quoting *Jones v. Jones*, 163 F.3d 285, 302 (5th Cir. 1998)) (alteration in original) (internal quotation marks omitted). "A reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in its outcome." *Id.*

Appellate counsel's "failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) ("Because the claim . . . is without merit, the claim of ineffective assistance of counsel for not raising the issue on appeal is, likewise, without merit."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

Thompson contends that "Counsel Floyd should have raised on appeal the lack of evidence to support any findings on drug weight" and that there was an "obvious lack of

11

evidence [for] the § 924(c)(1) conviction."[31] Thompson also asserts that "[i]t would be impossible for the Court or the jury to determine a drug quantity attributable to the movant by the [presentence report ("PSR")] prepared by the Probation Department and adopted by the Court."[32] Thompson further asserts that at sentencing, "the Court[] neglected in any meaningful way to articulate the factors set forth in Title 18 U.S.C. § 3553(a)," and that Floyd should have raised this issue on appeal.[33]

With respect to the sufficiency of the evidence, the Court notes that as the Fifth Circuit stated on Thompson's direct appeal, "[r]eviewing the sufficiency of the evidence is not about whether the outcome was correct but merely whether the verdict was reasonable."[34] *Thompson*, 735 F.3d at 301 (citing *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001)). On direct appeal, Thompson "claim[ed] there was no evidence connecting him to the conspiracy other than the testimony of the co-conspirators." *Id.* at 302. The Fifth Circuit noted that such evidence "may be constitutionally sufficient evidence to convict," and it held that "[a] rational trier of fact could find Thompson was a voluntary participant in a drug conspiracy."[35] *Id.* (internal quotation marks omitted).

---

[31] R. Doc. No. 346, at 16 (emphasis omitted).

[32] R. Doc. No. 346, at 16. Thompson also states that "[t]he evidence the Government presented and used was generally false information." R. Doc. No. 346, at 17. However, the jury heard two days of testimony and it was in the best position to evaluate the veracity of the evidence that it considered. This argument is more fully addressed in connection with ground five.

[33] R. Doc. No. 346, at 16 (emphasis omitted). Thompson objects that the Court's "explanation was why it was not imposing a sentence instead of why it was imposing it," referring to an outburst during the sentencing hearing. R. Doc. No. 346, at 16. During the sentencing hearing, there was a disruption by a woman who identified herself as Thompson's daughter, and the Court had her temporarily detained. R. Doc. No. 288, at 9. The Court emphasized to Thompson that her outburst was "not being held against you." R. Doc. No. 288, at 9.

[34] R. Doc. No. 309, at 15.

[35] Thompson objects that there was not "any evidence against [him] stating that he was a leader, organizer, manager, etc. yet the court found him guilty of being responsible for the conspiracy." R. Doc. No. 346, at 4 (capitalization altered). Thompson's argument mirrors the language found

Thompson also asserted on direct appeal that there was insufficient evidence with respect to count 3, the § 924(c) charge, because "no one put[] a weapon in [his] hand or in immediate proximity to him." *Id.* (internal quotation marks omitted). However, as the Fifth Circuit noted:

> Contrary to Thompson's assertion, testimony demonstrates that Thompson owned, carried, and used weapons in furtherance of the conspiracy. Per the testimony of DEA Agents Salvador Scalia and Jamey Tarrh, Thompson, shortly after being arrested, admitted to owning a loaded assault weapon found near the seized crack cocaine and money. [Co-defendants] Kelly and Pipkins also testified that Thompson carried a weapon during drug deals. In fact, Thompson was known as a "trigger man."

*Id.* The Fifth Circuit stated that "[p]hysical evidence further corroborated that testimony" and found that the evidence was sufficient with respect to the § 924(c) count. *Id.*

With respect to the drug quantities attributable to Thompson, the jury determined that he was responsible for two hundred eighty (280) grams or more of cocaine base ("crack").[36] Although the Fifth Circuit did not specifically mention drug quantities in its opinion, the record reflects that there was sufficient evidence to allow the jury to make its factual finding that Thompson was responsible for 280 grams or more of crack cocaine.[37] Thompson received the minimum mandatory sentence required by statute based on such quantity.[38]

---

in the PSR regarding his role assessment under the U.S. Sentencing Guidelines, and the Court notes that the PSR also stated that "Thompson's role cannot be considered minor." R. Doc. No. 203, ¶ 51. That paragraph of the PSR is irrelevant for the purposes of considering whether Thompson was guilty of conspiracy pursuant to 21 U.S.C. § 846. As stated in the Fifth Circuit Pattern Jury Instructions (Criminal) § 2.89 (2012), "If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part."

[36] R. Doc. No. 138-2, at 2.

[37] *E.g.*, R. Doc. No. 287, at 57-59 (testimony of Albert Kelly) (Q: What type of drugs did he [Thompson] ask you for? A: Crack cocaine. . . . Q: So you fronted the drugs to him? A: Yes, sir. Q: How much, do you remember? A: Probably two ounces, two and a quarter ounce. Q: And, at some point in time, did he pay you back for that? A: Yes, sir. Q: How much? A: $1,800. Q: Did you continue to give him drugs? A: Yes, sir. Q: For how long? A: Probably a year. Q: A year? So this began in 2010? A: Yes, sir. Q: Up until about 2011? A: Yes, sir. Q: Up until the time of

With respect to sentencing, the Court stated that it "considered all the Section 3553 factors";[39] it discussed on the record Thompson's criminal history, family, and health issues;[40] and it explained that the 240-month sentence as to counts 1 and 2 "is a restricted range" based on the statutory minimum, and that a 60-month sentence as to count 4 "must [be] consecutive pursuant to statute."[41] The Court then entered the mandatory minimum sentence required by statute. Accordingly, any appeal based on this Court's sentencing decision would have been frivolous because the Court satisfied its duty to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c).

---

your arrest? A: Yes, sir. Q: You would give him what quantity of drugs? A: Two ounces, two and a quarter ounces. Q: How often? A: Once, twice a week. Q: Once or twice a week? A: Yes, sir. Q: For about a year? A: Yes, sir. Q And how much would he pay you for these drugs? A $1,800."); R. Doc. No. 287, at 65 ("Q: Was he [Thompson] also involved in your drug trafficking activities? A: Yes, sir. Q: When you say we were all together, are you saying you were all together involved in drug trafficking activities? A: Yes, sir. Q: And who were we all? Who is we all? A: Eugene Thompson, Lawrence Cavelier, Gemayal Pipkins.").

[38] In cases involving "280 grams or more of a mixture or substance . . . which contains cocaine base," "any person who violates [§ 841(a)] shall be sentenced . . . to a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A). However, the statute also provides that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." *Id.* Because Thompson "pled guilty to the charge of using a telephone to facilitate a drug trafficking crime" and such conviction was final, Thompson was subject to the increased mandatory minimum sentence. R. Doc. No. 129. The Court imposed such mandatory minimum sentence in connection with counts 1 and 2 of the superseding indictment. R. Doc. No. 220, at 2.

[39] R. Doc. No. 288, at 10.

[40] R. Doc. No. 288, at 8-9; *cf.* 18 U.S.C. § 3553(a)(1) (directing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant").

[41] R. Doc. No. 288, at 7; *see also* USSG § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."); USSG § 5G1.2(a) ("[T]he sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment, shall be determined by that statute and imposed independently.").

Thompson has not demonstrated that his appellate counsel's performance was constitutionally deficient. Furthermore, Thompson fails to demonstrate *Strickland* prejudice with respect to this issue.

### III.    Trial Decisions

Thompson contends that Floyd "had two letters from both his co-defendant [Albert Kelly ("Kelly")] and his girlfriend [Rockelle Pichon ("Pichon")] that refuted the testimony the Government presented."[42] Thompson contends that Floyd "failed to call [these] witness[es] or any witness" and that Floyd "wait[ed] until the Saturday before trial started on Monday to finally review the discovery."[43] Thompson also asserts that Floyd stated "that the reason he was not calling the witness [Pichon] was due to 'time limitations.'"[44]

The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*

Thompson's argument with respect to Kelly is frivolous because Kelly actually testified at trial.[45] With respect to Pichon, Thompson and Floyd made the strategic decision not to call her as a witness. The Court questioned Thompson on the record and advised him that he had a right

---

[42] R. Doc. No. 346, at 17.
[43] R. Doc. No. 346, at 17.
[44] R. Doc. No. 346, at 17.
[45] *See, e.g.*, R. Doc. No. 138, at 1; R. Doc. No. 287, at 54.

to call Pichon to testify, but Thompson chose not to call her.[46] Thompson agreed that not calling Pichon as a witness was his decision, not Floyd's.[47] Thompson cannot now retract these statements that he made in open court. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Gonzalez-Archuleta*, 507 F. App'x 441,

---

[46] The Court questioned Thompson on the record regarding this strategic decision:

> THE COURT: . . . By the way, have either of you decided what you want [to] do about Ms. Pichon?
>
> MR. FLOYD: We've decided the defense will not call Ms. Pichon.
>
> THE COURT: Let me ask you about that, Mr. Thompson.
>
> You understand that the document [sic] has M[s]. Pichon under subpoena, and I've asked the government to make sure she's here in case you wanted to call her as a witness.
>
> That was discussed with your counsel, and the government did tell your counsel that it thought that there would be some things that might be said that are damaging to your case. But I don't know that to be the case.
>
> And, of course, if you wish to call her for any reason whatsoever, you can do that. Again, that's your choice, not your counsel's choice. You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: So you've had an opportunity to discuss that with Mr. Marion?
>
> THE DEFENDANT: I have, yes, sir. We were discussing that as you came in the door.
>
> THE COURT: Have you made a decision on that?
>
> THE DEFENDANT: Yes, sir.
>
> I don't need her.
>
> THE COURT: And you understand that you have a right to call her, and I'll make sure she's here to testify if you want her to testify? Do you understand that[?]
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: But you choose to have her not to testify? [sic]
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That's your decision, not your counsel's decision; is that right, sir?
>
> THE DEFENDANT: Yes, sir.

R. Doc. No. 287, at 153-55.

[47] R. Doc. No. 287, at 155.

442 (5th Cir. 2013)). The decision not to call Pichon was "a matter of trial strategy," *Day*, 566 F.3d at 538, and Thompson, himself, made that decision after an explanation of his rights by the Court.[48] Accordingly, Thompson has not satisfied either *Strickland* prong with respect to the decision not to call Pichon.

To the extent that Thompson is alleging some other failure to investigate,[49] under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted) (emphasis added); *see also United States v. Goodley*, 183 F. App'x 419, 422-23 (5th Cir. 2006) (citing *Green*, 882 F.3d at 1003). Thompson has not identified any other evidence that should have been presented and, therefore, he has not satisfied *Strickland* in that regard.

To the extent that Thompson takes issue with the decision not to present any evidence,[50] the record reflects that Thompson discussed such decision with Floyd and, as the Court instructed the jury, Thompson decided "to rest on [his] presumption of innocence [as] the defendant is entitled to do."[51] The Court thoroughly explained to Thompson his right to testify, and Thompson stated that he understood that the decision was his and that he could disagree with his lawyer.[52] He was provided the opportunity to ask the Court any questions that he may have

---

[48] *See* R. Doc. No. 287, at 153-55.

[49] *See also* R. Doc. No. 346, at 21 (mentioning failure to investigate in connection with ground four).

[50] *E.g.*, R. Doc. No. 346, at 17 (mentioning the failure to "present a defense").

[51] R. Doc. No. 287, at 178.

[52] R. Doc. No. 287, at 152-53 ("THE COURT: . . . I want to address Mr. Thompson. Mr. Thompson, come up to the podium, please. The government is intending to present one more witness before it rests. Then you need to decide whether or not you're going [to] testify or not. I want to advise you that you have the right to testify [on] your own behalf, and that right is your[s] and yours alone. You should obviously listen to what [your] lawyer has to say and evaluate it . . . in determining whether or not you should testify. But you can certainly disagree

had, and the record reflects that he declined to do so.[53] Although Thompson may now regret his decision, he has not presented any evidence that he satisfies either *Strickland* factor in connection with the decision to rest on his presumption of innocence.

Finally, to the extent that Thompson is alleging a general lack of preparedness by Floyd, such allegations are rejected as nonspecific and conclusory. Having presided at trial, the Court finds that Thompson's assertion that Floyd "failed to prepare in advance"[54] is meritless. Accordingly, Thompson's third asserted ground for relief is without merit.

### IV.   Failure To File a Motion to Suppress

Thompson contends that Floyd provided ineffective assistance of counsel by failing to file a motion to suppress a statement that he made during the search of Kelly's residence.[55] According to testimony adduced at trial, when two DEA agents were discussing the assault rifle

---

with your lawyer and decide to testify, even over [your] lawyer's objection. Of course, if you do testify, you do understand that the government will be able to ask you about your prior felony conviction. THE DEFENDANT: Yes, sir. THE COURT: Here in Federal court. So do you have any questions you want to ask the Court with your right to testify? THE DEFENDANT: No, sir. THE COURT: And you understand, if you don't testify, I'll instruct the jury that they cannot hold that against you because you're relying upon your Fifth Amendment privilege and that the government still of course has the duty of proving your guilt beyond a reasonable doubt as to every count. Do you understand that? THE DEFENDANT: Yes, sir. THE COURT: Have you made a decision yet about what you're going to do? THE DEFENDANT: No. We're talking about it now. THE COURT: You all talk about [it] and make your decision. If you have any [other] questions, let me know."); R. Doc. No. 287, at 153-55 (quoted above); R. Doc. No. 287, at 177-78 ("THE COURT: The motion [for an acquittal] is denied. What are you going to do? MR. FLOYD: Again, I would like a couple of minutes to discuss it with Mr. Thompson. He is still ambivalent. (Sidebar concluded. Jury now present.) THE COURT: Counsel just needs a couple of minutes to confer with his client, and then I'll know how we're going to proceed from here. (Pause in proceedings.) . . . THE COURT: Mr. Marion. MR. FLOYD: Your Honor, the defense rests. THE COURT: All right. The defense rests. Chooses to rest on its presumption of innocence. Which, of course, as I told you, the defendant is entitled to do. So there is no other additional evidence that you will hear in connection with this case. We're going to go into closing arguments.").
[53] *See* R. Doc. No. 287, at 153.
[54] R. Doc. No. 346, at 17.
[55] R. Doc. No. 346, at 18-21.

that was found upstairs at Kelly's residence, Thompson "blurted out: Hey, that's mine, he's just holding it for me."[56] Thompson asserts that such statement should have been suppressed because he "was in custody at that time and had not been [Mirandized]."[57] Thompson contends that he "repeatedly asked Counsel Floyd to file a motion to suppress."[58]

The Court need not address whether Floyd's performance was deficient because Thompson cannot demonstrate that he suffered any *Strickland* prejudice. The question of whether *Strickland* prejudice occurs when counsel fails to file a motion to suppress a confession allegedly obtained in violation of the Fifth Amendment "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987); *see also United States v. Allen*, No. 07-161, 2010 WL 1403959, at *6 (E.D. La. Mar. 30, 2010) (Africk, J.) ("The inquiry turns on whether a hypothetical motion to suppress would have been successful.") (citing *Oakley*, 827 F.2d at 1025); *cf. United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990) ("In order to show ineffective assistance for the failure to make a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed.") (citing *Kimmelman v. Morrison*, 447 U.S. 365, 375 (1986)).

Three DEA agents testified at trial that Thompson was Mirandized before making his statement.[59] As noted by the government, the agents also "testified that Thompson blurted out

---

[56] R. Doc. No. 287, at 163.
[57] R. Doc. No. 346.
[58] R. Doc. No. 346, at 28.
[59] R. Doc. No. 286, at 167 (Special Agent George Cazenavette) ("A: . . . When we made our way upstairs, there was a large sum of money strewn out across the dresser and a rifle standing in the corner of the bedroom. Q: At that time, did you see any other weapons? A: No, sir. Q: So what did you do next? A: We came back outside, and Albert Kelly and Eugene Thompson were

that the rifle in question belonged to him."[60] Thompson has not provided any evidence whatsoever to corroborate his post-hoc assertion that he was not Mirandized before making his statement regarding the rifle and, as discussed below in further detail in connection with ground five, he has not identified any other witness or evidence which would suggest that the agents were untruthful. Because Thompson has not shown that any motion to suppress would have been

---

handcuffed. They were brought into the residence and seated inside the residence. And they were Mirandized. Q: What does that mean, they were Mirandize[d]? A: They were read their rights."); R. Doc. No. 287, at 26 (Special Agent Salvador Scalia) ("A: After I came downstairs from doing the security sweep, I notified Special Agent Tarrh that there is some evidence upstairs. There's a weapon upstairs, there was a large amount of cash, there was some crack cocaine upstairs. Q: Now, at this point, had the defendant [Thompson] and others been Mirandized? A: Yes, sir."); R. Doc. No. 287, at 169 (Special Agent Jamey Tarrh) ("Q: You didn't Mirandize Mr. Thompson; did you? A: I did not. Q: Meaning, read him his rights, his right to literally not say anything? A: No. Special Agent Brian Hart Singleton Mirandized [him]. I did not have to. Q: And, at that point, even though Mr. Thompson knew he had a right against self-incrimination, he blurted out that he owned that large weapon? A: That's correct, sir. Q: And you called it a spontaneous utterance? A: A spontaneous utterance is what we refer to it as.").

[60] R. Doc. No. 359, at 8; see also R. Doc. No. 287, at 27 (Agent Scalia) ("Q: And what was the comment that Agent Tarrh made? A: The comment that Agent Tarrh made, he turned to Mr. Albert Kelly and he said, kind of in a tongue [in] cheek way or in a rhetorical way: Hey, what are you doing with that gun in here with all that dope? Q: What happened next? A: At that point in time, before he had time to answer, Mr. Eugene Thompson stated: That gun's mine. Q: Now, were you surprised to hear that? A: I was surprised to hear that. We don't usually get an admission when we make arrests. We don't usually get admissions from people admitting that weapons are [theirs]."); R. Doc. No. 287, at 163 (Agent Tarrh) (Q: And at some point did you make any statement or ask any questions? A: I made a statement more than a question probably. I was talking to Agent Scalia about the weapon that was upstairs. Not out of frustration, but we found a loaded assault weapon that defeats our vests. And I, in talking with Scalia, Agent Scalia about that gun, I turned in the direction of Mr. Thompson and Mr. Kelly, who were seated about five to ten feet apart on the ground, and I said something to the effect of: What are you doing with a machine gun upstairs around all that dope and money? Q: And who were you directing that toward? A: I wasn't directing it toward a specific person. I was -- I did look in the direction of Mr. Thompson and Mr. Kelly. I kind of said it in a rhetorical way. I wasn't expecting to get a response from anyone. Q: And did Mr. Kelly say anything? A: Mr. Kelly really didn't have time to say anything. Q: Why not? A: Because Mr. Thompson blurted out: Hey, that's mine, he's just holding it for me. Q: What was your reaction to that? A: I was a little shocked. In my report, I termed it a spontaneous utterance. Couldn't really explain -- when he just blurt[ed] something out, it came out.").

granted, Thompson cannot demonstrate that he suffered any *Strickland* prejudice and his fourth asserted ground for relief is without merit. *See Oakley*, 827 F.2d at 1025.

## V.     Alleged Perjury

Thompson asserts that "Agent Jamey Tarrh offered perjured testimony during both direct and cross examination in the Movant's trial without Counsel objecting to the Government's use of information that was obviously false."[61] Thompson asserts that Agent Tarrh's testimony regarding Thompson's statement that he owned the assault rifle "was a contradiction of [Agent Tarrh's] official report" in which he wrote "that Albert Kelly claimed ownership of the drugs and firearms found in the residence."[62] Thompson is referring to the following exchange which occurred during Floyd's cross-examination of Agent Tarrh:

> Q:     But -- and I asked you, did anyone else claim the items in the apartment that were seized that night. You originally said: No.
> And that's not true; is it?
> A:     I don't believe that was my statement, sir.
> I said what my statement was at the time, what was being told to me by the defendants is who was the owner. I realize that various people in this case have claimed ownership and then disclaimed ownership.
> At the time of being inside that apartment, what was told to me by Mr. Thompson was that the gun was his: He [Kelly] was just holding it for me.
> Q:     On the night of the investigation when you made your report dated March 3, 2011, was anyone else indicated in your report as claiming ownership of both the drugs and the guns?
> MR. BOITMANN: Judge, I'm going to object at this point. The witness can only answer as to his personal knowledge he has.
> THE COURT: He's asking about what he said in his report. He's asking -- ask him specifically what he said in his report. He's asking if that's his statement.
> BY MR. FLOYD:
> Q:     Sir, I'm going to read a line from your report.
> After being advised of his Miranda Rights by Special Agent Singleton and Caz[e]navette, Kelly admitted to being the owner of all the drugs and guns located at the residence.
> Did I read that correctly from your report?

---

[61] R. Doc. No. 346, at 22.
[62] R. Doc. No. 346, at 23.

> A:      You read correctly what Special Agent Singleton and Caz[e]navette put in their custody of evidence, yes, sir.
> Q:      But that was part of your report?
> A:      Yes sir.[63]

Thompson also contends that "[t]he problem with [Agent Tarrh's] statement [that Thompson claimed ownership of the rifle] is no other Agent Police Officer or nor did [sic] the Co-defendant hear this statement spoke[n] across a room."[64] Thompson contends that Floyd "had a professional duty to ask that the Court have this perjury corrected" and that "allowing it to go uncorrected when it appears can be a violation of due process."[65]

"'To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false.'" *Isaac v. Cain*, 588 F. App'x 318, 327 (5th Cir. 2014) (quoting *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997)). "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)). "[C]ontradictory trial testimony . . . merely establishes a credibility question for the jury." *Koch*, 907 F.2d at 531 (citing *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988)).

Agent Tarrh's testimony conflicted with other information from Agents Singleton[66] and Cazenavette which was contained in Agent Tarrh's written report. Floyd cross-examined Agent Tarrh regarding this conflict and read the relevant portion of the report to Agent Tarrh before the

---

[63] R. Doc. No. 287, at 174-75.
[64] R. Doc. No. 346, at 23.
[65] R. Doc. No. 346, at 23.
[66] Agent Singleton did not testify at trial. *See, e.g.*, R. Doc. Nos. 135, 138.

jury. The government also called Agent Scalia to testify as to Thompson's statement[67] and, as noted previously, their recollections of Thompson's admission are substantially similar. Furthermore, the government also called Agent Cazenavette, who testified that he never heard Thompson make any statement regarding the rifle,[68] and that Kelly claimed ownership of the weapons.[69]

Any conflicting testimony "merely establish[ed] a credibility question for the jury," *Koch*, 907 F.2d at 531, and the jury apparently resolved that credibility question against Thompson. Such a conflict "is insufficient to establish perjury." *Kutzner*, 242 F.3d at 609. Accordingly, Thompson has not met his burden of proof relative to the alleged due process violation. Thompson's fifth asserted ground for relief is without merit as Thompson has failed to establish either *Strickland* prong.[70]

---

[67] R. Doc. No. 287, at 27.

[68] R. Doc. No. 286, at 211 ("THE COURT: Did you hear the defendant make any statements to which you've testified? THE WITNESS: I did not hear him [Thompson] make the statement about the gun. I wasn't [sic] the two agents that were involved in the conversation when that took place. THE COURT: So he really can't testify to that. . . . So that testimony as to what the defendant [Thompson] said with respect to the rifle should be disregarding by the jury until we have a proper evidentiary foundation for such a statement if ever.")

[69] R. Doc. No. 286, at 208 ("Q: Oh, by the way, Mr. Kelly, Albert Kelly, the owner of the apartment, claimed that the drugs and weapons in the apartment were his; didn't he? A: Yes, he did.").

[70] The Court notes that the government's written opposition does not contain any argument specifically directed to Thompson's fifth asserted ground for relief. The Court has been advised that this was an inadvertent omission and that the government opposes this ground as well. The Court also notes that the government's position regarding the truthfulness of Agent Tarrh's testimony is abundantly clear from its opposition and from the trial transcript.

**CONCLUSION**

For the foregoing reasons, the motion, files, and record of the case conclusively show that defendant is not entitled to relief. Accordingly,

**IT IS ORDERED** that the motions are **DENIED** and defendant's application for post-conviction relief pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, July 8, 2015

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**