## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 11-70** |
| **EUGENE THOMPSON** | **SECTION I** |

### ORDER & REASONS

Before the Court is *pro se* defendant Eugene Thompson's ("Thompson") motion[1] for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  The government opposes the motion.[2]  Considering the factors in 18 U.S.C. § 3553(a), the Court concludes that compassionate release is not warranted.

### I.

In 2011, a jury convicted Thompson of four counts: (1) conspiracy to distribute and to possess with the intent to distribute 280 grams or more of cocaine base and a quantity of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 846; (2) possession with the intent to distribute same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 18 U.S.C. § 2; (3) possession of a firearm in furtherance of the drug trafficking crime alleged in count 2, in violation

---

[1] R. Doc. No. 440.  Thompson's motion also contained language the Court construed as a motion for appointment of counsel, which it denied.  R. Doc. No. 442. Thompson, interpreting the Court's Order as a denial of his motion for compassionate release, filed a Notice of Appeal that purported to appeal both the denial of appointed counsel and the denial of the motion for compassionate release—a denial that had not occurred.  *See* R. Doc. No. 444 (Notice of Appeal).  The Fifth Circuit dismissed that appeal on March 10, 2021, R. Doc. No. 453, meaning the Court can now address the merits of Thompson's motion.
[2] R. Doc. No. 445.

of 18 § U.S.C. 924(c)(1)(A)(I) and 18 U.S.C. § 2; and (4) possession of a firearm in and affecting interstate commerce after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[3]

This Court sentenced Thompson to (1) a term of imprisonment of 240 months each for counts one and two; (2) a term of imprisonment 120 months as to count four, to be served concurrently to the term for counts 1 and 2; and (3) a term of imprisonment of 60 months as to count three, to be served consecutively to each of the terms imposed for counts one, two, and four, for a total sentence of 300 months.[4] Thompson is currently incarcerated at Forrest City Medium FCI; his projected release date is November 10, 2033.[5]

Thompson asks the Court to grant him compassionate release due to the COVID-19 pandemic.[6] He suffers from "High Blood Pressure," "severe obesity and overweight," and the lingering effects of a number of earlier injuries, all of which, he claims, "could become seriously detrimental to his health if he" were to contract COVID-19.[7]

---

[3] *See* R. Doc. No. 127 (Superseding Indictment); R. Doc. No. 203, at 8 ¶ 17 (presentence report).

[4] R. Doc. No. 220 (judgment).

[5] *Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 8, 2021).

[6] R. Doc. No. 440, at 1.

[7] *Id.* at 1–2.

Thompson also argues that "a few legal issues" relating to his conviction constitute extraordinary and compelling circumstances meriting his release.[8]  The proffered "legal issues" are, in fact, a laundry list of collateral attacks on the jury's verdict, as well as this Court's sentence.  Thompson acknowledges most of these have been reviewed and rejected repeatedly by this Court and the Fifth Circuit, and that the Supreme Court has denied certiorari.[9]

Thompson submitted a request for compassionate release to his warden more than thirty days ago and the government concedes that he has thereby exhausted administrative remedies.[10]

However, the government opposes Thompson's motion on the merits.  It argues that he "has not established a medical condition that is an extraordinary and compelling reason to grant his release" and that, even if he had, he "has failed to demonstrate that his release does not present a danger to the safety of the community."[11]  In support of its second argument, the government points to the nature of Thompson's offenses and his role as an "enforcer" in a drug trafficking scheme.[12]  It notes that Thompson "routinely carried firearms during . . . drug

---

[8] *Id.* at 4–7.

[9] *See id.*  While a motion for compassionate release is not the appropriate vehicle for such collateral attacks on a sentence, the Court need not address this matter further because it concludes that, even if Thompson has established extraordinary and compelling reasons meriting release, the risk to the public is too significant to allow his release.

[10] R. Doc. No. 447.

[11] R. Doc. No. 445, at 1.

[12] *Id.* at 2.

transactions" and "provided protection" for a co-defendant during sales.[13]   The government also points to a prior conviction for battery[14] and Thompson's own claim in his instant motion that he has been shot twenty times as further evidence of his predilection for violence.[15]

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  That general rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[16] For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier."  *Id.* § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction."  *Id.*  The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*

---

[13] *Id.* at 6 (citing R. Doc. No. 203, at 14 ¶ 51).
[14] *Id.* (citing R. Doc. No. 203, at 18 ¶ 74).
[15] *Id.* (presumably referencing R. Doc. No. 440, at 1).
[16] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual.  The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'"  *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release.  Previously, only the Director of the BOP—not defendants on their own—could move for compassionate release.  The First Step Act changed that.  However, the Sentencing Commission's policy statements have lagged behind.  Because these policy statements have not been amended since the enactment of the First Step Act, portions of them contradict 18 U.S.C. § 3582(c)(1)(A).  For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants).  U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

The government argues that, discrepancy or not, the policy statement is binding—but that is incorrect.[17]  The Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, No. 20-40543, __ F.3d ___, 2021 WL 1291609, at *4 (5th Cir. Apr. 7, 2021).  Nonetheless, the Fifth Circuit has also recognized that the policy statement, may still "inform[] [its] analysis." *Thompson*, 984 F.3d at 433.[18]

But the Court need not conduct such analysis.  That is because, assuming *arguendo* that extraordinary and compelling circumstances exist,[19] Thompson has not carried his burden to demonstrate that the applicable § 3553(a) factors justify his release.  As explained *infra*, that means Thompson's motion must be denied.

### III.    Section 3553(a) Factors

"[A]fter considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the Court concludes that compassionate release is not warranted.  *See* 18 U.S.C. § 3582(c)(1)(A).  The most applicable factor is "[the need] to protect the public from further crimes of the defendant."   18 U.S.C. §

---

[17] R. Doc. No. 445, at 4 n.3.  The Court notes that the government filed its opposition before the Fifth Circuit weighed in—it cannot be faulted for making the argument.

[18] While *Shkambi* postdates *Thompson* by three months, nothing about *Shkambi* suggests that *Thompson* is bad law, or that the Court *cannot* use the policy statement as a tool in its review—only that it is not bound by it.

[19] Although the Court doubts that they do.

3553(a)(2)(C).[20]  Thompson has not satisfied the Court that he is not a danger to the public; a sentence reduction is therefore inappropriate.

Thompson was an enforcer in a drug trafficking scheme who regularly possessed illegal firearms.[21]  At times during sales, he would "hold [a] firearm openly . . . in a show of force."[22]  This conduct is indicative of his willingness to use violence and the threat of violence to further illegal activity.  His conviction for battery indicates that the offenses of conviction were not aberrations, as does the fact that he has been shot twenty times.[23]

Furthermore, Thompson's motion ignores this concern entirely.  Thompson writes at length of the dangers posed by COVID-19.  The Court is aware of those risks, and it is sympathetic to Thompson's concerns.  But the Court is also tasked with protecting the public from the dangers posed by Thompson.  And he has offered the Court no reason to think those dangers are any less present than they were when he committed the offenses of which he was convicted.  That necessitates this denial.

---

[20] The Court notes that the now-advisory sentencing guideline *required* the Court to make a similar finding.

[21] R. Doc. No. 203, at 14 ¶ 51.  In support of his motion, Thompson offers an affidavit of a co-defendant, who avers that a rifle present at the time he and Thompson were arrested did not belong to Thompson.  R. Doc. No. 440-1, at 68.  The Court notes that Thompson claimed responsibility for the weapon at the time.  *Id.*  But even assuming *arguendo* that the affidavit is truthful, it does not assuage the Court's concerns in any way.

[22] R. Doc. No. 203, at 12 ¶ 44.

[23] The Court also notes that, as a juvenile, Thompson was found to have committed the offense of "illegal carrying of a weapon."  *Id.* at 16 ¶ 70.  He was also sentenced to three years in prison for obstruction of justice after he threatened a murder victim's wife, reportedly telling her to "look out for you and your son and back off or we'll waste you like we did your husband" before pointing his finger at her and saying "pow, pow, pow."  *Id.* at 17 ¶ 72.

**IV.**

Accordingly,

**IT IS ORDERED** that Thompson's motion for compassionate release under

18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, April 9, 2021.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**